NEW JERSEY COUNTY AND MUNICIPAL COUNCIL #61, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, et al., Appellees,

v.

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, et al., Appellants.

No. 72–1645.

United States Court of Appeals, Third Circuit.

Argued Nov. 16, 1972.

Decided May 4, 1973.

A. L. Zwerdling, Gen. Counsel, AFSCME AFL–CIO, Zwerdling, Maurer, Diggs & Papp, Washington, D. C., Michael H. Gottesman, Darryl J. Anderson, Bredhoff, Barr, Gottesman, Cohen & Peer, Washington, D. C., for appellants.

Warren J. Kaps, Stein & Rosen, Englewood Cliffs, N. J., and Seymour Margulies, Jersey City, N. J., for appellees.

Before ALDISERT, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

This is an appeal from a district court judgment and permanent injunction which, *inter alia*, enjoins appellant American Federation of State, County and Municipal Employees, AFL–CIO (the international), from maintaining a trusteeship which it had imposed over one of its constituent local unions, Local 1959.[1] Since we find that the district court had no subject matter jurisdiction in this matter, we reverse the judgment and order that the complaint be dismissed. The facts in this case were reviewed at length by Chief Judge Coolahan in his June 20, 1972 opinion, and it is unnecessary to repeat them here.[2]

Appellants have raised several arguments before this court, but the only one which we must consider is whether the district court had jurisdiction to enjoin the international under Title III of the Labor Management Reporting and Disclosure Act of 1959 ("Act" or "LMRDA"), 29 U.S.C. §§ 461–466. Section 302 of that Act, 29 U.S.C. § 462, states in pertinent part:

> "Trusteeships shall be established and administered by a *labor organization* over a *subordinate body* only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of . . . otherwise carrying out the legitimate objects of such labor organization. (Emphasis added.)

The litigants agree that the international is a "labor organization" as defined in § 3(i) and (j) of the Act, 29 U.

1. While it appears that the trusteeship in question was imposed only over Local 1959, there existed at the same time an unchartered organization known as New Jersey County and Municipal Council No. 61 which had been designed as the successor of Local 1959. The district court found that Council No. 61 was a viable entity having a de facto existence, and that it and Local 1959 constituted a hybrid organization. Accordingly, all references to Local 1959 in this opinion shall be deemed to include Council No. 61.

2. New Jersey County and Municipal Council No. 61 v. American Fed'n of State, County and Municipal Employees, No. 196–72 (D.C.N.J. June 20, 1972).

S.C. § 402(i) and (j),[3] since it has chartered a small number of local unions which represent employees in the private sector. On the other hand, Local 1959 is not a "labor organization" under the Act because its charter limits its membership exclusively to Hudson County New Jersey public and civil service employees. § 3(e), (i) and (j), 29 U.S.C. § 402(e), (i) and (j).[4] Consequently, the issue which we are required to decide is whether a trusteeship imposed by a parent "labor organization" upon a local which is not a "labor organization" is regulated by the trusteeship provisions of Title III. Appellants argue that the term "subordinate body"[5] was used in Title III interchangeably with the term "subordinate labor organization," and that the imposition of a trusteeship over Local 1959 is not governed by the Act since Local 1959 is not a "subordinate labor organization" and thus not a "subordinate body" as that term is used in § 302. Appellees disagree with this interpretation and contend instead that Congress meant to distinguish between a "subordinate body" and a "subordinate labor organization."

In addressing this problem, we first observe that the LMRDA has six titles "dealing with various facets both of internal union affairs and of labor-management relations." Wirtz v. Bottle Blowers Ass'n., 389 U.S. 463, 469, 88 S.Ct. 643, 647, 19 L.Ed.2d 705 (1968). Putting aside Title III for the moment, our examination of the Act reveals that its other five titles specifically apply only to "labor organizations" and thus do not affect public employee unions. Title I enacts a bill of rights for members of labor organizations; Title II involves reporting by labor organizations, officers and employees of labor organizations and employers; Title IV concerns itself with elections in labor organizations; Title V provides various safeguards for labor organizations; and Title VI consists of certain miscellaneous provisions. Viewing the Act as a whole, it thus seems that if Congress had intended Title III to regulate the manner in which a trusteeship may be imposed upon a public employee union, it would clearly have said so. This it did not do. Nevertheless, it is true that Title III, alone among the Act's provisions, some-

3. § 3(i) of the Act provides:
   "(i) 'Labor organization' means a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a State or local central body."
   § 3(j) of the Act provides in pertinent part:
   "(j) A labor oranization shall be deemed to be engaged in an industry affecting commerce if it—
   (1) is the certified representative of employees under the provisions of the National Labor Relations Act, . . . or

   (2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce, or . . . "

4. Municipal governments are not recognized as employers under the LMRDA, § 3(e) provides in pertinent part:
   "(e) 'Employer' means any employer or any group or association of employers engaged in an industry affecting commerce . . . but does not include the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof."
   Consequently, a union like Local 1959 which represents only municipal employees cannot be a "labor organization" within the meaning of the Act.

5. The term "subordinate body" is not defined in the Act.

times uses the phrase "subordinate body" rather than "labor organization." Consequently, a section by section examination of Title III is necessary in order to determine whether or not "subordinate body" was meant to include public employee unions.

Title III contains four operative sections, §§ 301 through 304 of the Act, 29 U.S.C. §§ 461–464.[6] Section 301(a), 29 U.S.C. § 461(a), establishes reporting requirements which a "labor organization" must comply with whenever it "assumes trusteeship over any subordinate labor organization."[7] Public employee unions are not covered by § 301 because, as we have noted, these unions are not "labor organizations" under the Act. Since a principal reason for § 301 is to prevent violations of the substantive trusteeship requirements of §§ 302 and 303, 29 U.S.C. §§ 462 and 463, and to provide information about any possible violation, we agree with appellants that it is unlikely that the range of trustee-

ships governed by those sections would exceed that which is protected by the reporting provisions of § 301. This is also consistent with the manifest Congressional intent in the other five titles of the Act to exclude public employee unions.

While § 301 indicates that Title III does not regulate trusteeships over public employee unions, § 303 demonstrates even more strongly that this is so.[8] Its heading reads "Unlawful acts relating to *labor organizations* under trusteeship," yet the text of § 303(a) ends with a proviso that uses the term *"labor organization"* for the exact entity that the rest of that section discussed as a "subordinate body." (Emphasis added.) Plainly, then, Congress used these terms interchangeably in § 303.

The two remaining sections of Title III are §§ 302 and 304, 29 U.S.C. §§ 462 and 464. Section 302, which was quoted in part at the beginning of this opinion, establishes the purposes for which a trus-

6. Sections 305 and 306 of the Act, 29 U.S.C. §§ 465 and 466, are also part of Title III. However, since these sections do not deal with the establishment, maintenance or dissolution of a trusteeship, they have no bearing on this case and will not be discussed further.

7. § 301(a) of the Act provides in pertinent part:
    "(a) Every labor organization which has or assumes trusteeship over any subordinate labor organization shall file . . . within thirty days after . . . the imposition of any such trusteeship, and semiannually thereafter, a report . . . containing the following information: (1) the name and address of the subordinate organization; (2) the date of establishing the trusteeship; (3) a detailed statement of the reason or reasons for establishing or continuing the trusteeship; and (4) the nature and extent of participation by the membership of the subordinate organization in the selection of delegates to represent such organization. . . . The initial report shall also include a full and complete account of the financial condition of such subordinate organization as of the time trusteeship was assumed over it. During the con-

tinuance of a trusteeship the labor organization which has assumed trusteeship over a subordinate labor organization shall file on behalf of the subordinate labor organization the annual financial report required by section 431 (b) of this title. . . . "

8. § 303 of the Act provides:
    "Unlawful acts relating to *labor organization* under trusteeship
    "(a) During any period when a *subordinate body* of a labor organization is in trusteeship, it shall be unlawful (1) to count the vote of delegates from such body in any convention or election of officers of the labor organization unless the delegates have been chosen by secret ballot in an election in which all the members in good standing of such subordinate body were eligible to participate, or (2) to transfer to such organization any current receipts or other funds of the subordinate body except the normal per capita tax and assessments payable by subordinate bodies not in trusteeship: *Provided,* That nothing herein contained shall prevent the distribution of the assets of a *labor organization* in accordance with its constitution and by-laws upon the bona fide dissolution thereof." (Emphasis added.)

teeship may be imposed, and it is this section which appellees claim was violated when appellants placed Local 1959 under trusteeship. The other section, § 304, deals with procedural aspects of enforcing or challenging a trusteeship. Both of these sections use the term "subordinate body," and thus appellees argue that there is a distinction between "subordinate body" and "labor organization" or "subordinate labor organization." We cannot accept this literal interpretation of these two sections. As the Supreme Court has cautioned, labor legislation, and particularly the LMRDA, should not be construed literally but rather "against the background of its legislative history and in the light of the general objectives Congress sought to achieve." Wirtz v. Bottle Blowers Ass'n., supra at 468, 88 S.Ct. at 646; National Woodwork Mfrs. v. NLRB, 386 U.S. 612, 619, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). Appellees do not discuss the legislative history of the Act, and our examination of this history has revealed nothing to indicate that Congress intended to include public employee unions as subordinate bodies in §§ 302 and 304 while explicitly excluding them from the rest of the Act.

In summary, after considering the legislative history of the LMRDA, its express exclusion of public employee unions from the definition of "labor organization" in §§ 3(e), (i) and (j), its failure to regulate these unions in the other five titles of the Act, the use of the term "subordinate labor organization" in § 301, and the interchangeability of the terms "labor organization" and "subordinate body" in § 303, the only conclusion which we can reasonably reach is that public employee unions are not covered by the phrase "subordinate body" in §§ 302 and 304.

The judgment of the district court is reversed and this case is remanded to the district court so that the complaint may be dismissed in accordance with this opinion.