**William E. BROCK, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

**Raymond J. O'Connor and Doris A. Mikus, Intervenors,**

**v.**

**THE SOUTHERN REGION, REGION III of the CIVIL SERVICE EMPLOYEES ASSOCIATION INC., LOCAL 1000 AMERICAN FEDERATION of STATE, COUNTY and MUNICIPAL EMPLOYEES AFL-CIO, and the Civil Service Employees Association Inc., Local 1000 American Federation of State, County and Municipal Employees AFL-CIO, Defendants-Appellees.**

No. 338, Docket 86-6147.

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1986.

Decided Jan. 5, 1987.

Richard W. Mark, Asst. U.S. Atty., New York City (Rudolph W. Guiliani, U.S. Atty., S.D.N.Y., and Steven E. Obus, New York City, on the brief), for plaintiff-appellant.

William M. Wallens, Romer and Featherstonehaugh, P.C., Albany, N.Y. (Michael J. Smith, of counsel), for defendants-appellees.

Before KAUFMAN, MANSFIELD and WINTER, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Today we are called on to interpret a congressional regulatory statute in a manner that will discharge our twin obligations to prevent evasion and avoid judicially extending the statute beyond its intended confines. The Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401–531, (the "LMRDA") provides in § 481(g) that

> [n]o moneys received by any labor organization by way of dues, assessment, or similar levy ... shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of the [LMRDA].

In this case, a labor organization within the meaning of the LMRDA distributed union dues to one of its locals, which was not subject to the LMRDA. The local subsequently used these funds to promote a candidate in an election subject to the LMRDA. The Secretary of Labor brought an action against the parent union asking the district court to void the election and to order a new one under the Secretary's supervision.

We affirm the judgment of the district court dismissing the Secretary's complaint. Specifically, we hold that a violation of § 481(g) requires a showing that, at the time union dues were improperly expended, the dues were owned or controlled by a labor organization subject to the LMRDA. We find that in this case the local legally owned and exercised complete control over the funds and did not act as the agent of the LMRDA union or pursuant to its direction when it spent them to promote the candidacy. Accordingly, we conclude that no violation of § 481(g) occurred.

## 1. BACKGROUND

### A. The Union

Civil Service Employees Association, Inc., Local 1000, American Federation of State, County and Municipal Employees, AFL–CIO ("CSEA"), is a labor union incorporated under the laws of New York with its principal offices in Albany. CSEA is a statewide organization with a membership of approximately 200,000. Although it was originally organized as a union of public sector employees, CSEA's membership in recent years has grown to include private sector employees as well.

For purposes of internal organization, CSEA is divided into six geographical regions. Each region is under the direction of a President, at least three Vice-Presidents, a Treasurer, and a Secretary, all of whom are elected by the CSEA members assigned to the region. Region III covers the southern areas of New York State, including Westchester, Orange, Dutchess, Ulster, Rockland, Putnam, and Sullivan counties. During the time relevant to this litigation, Region III's membership was approximately 32,746.

Each region is further divided into local unions, which generally consist of CSEA members who work for the same employer or in a particular county of the state. Lo-

cals have separate legal and actual existences, with their own officers, constitutions, offices and bank accounts. Westchester County Local 860, which consists entirely of public sector employees, is the largest local in Region III. During the period relevant to this lawsuit, Local 860's membership approximated 9,673.

### B. The Secretary's Complaint

In 1984, pursuant to the constitutions of CSEA and Region III, an election for Region III officers was held. Ballots were mailed on or about May 15 and tabulated on August 15. Pat Mascioli won the election for Region III President with 2,940 votes out of a total of 4,888 votes cast. Raymond J. O'Connor, the incumbent Region III President, came in second with 1,659 votes.

After losing the election, O'Connor filed a protest with the CSEA Statewide Election Procedures Committee alleging that Mascioli had improperly used resources of Local 860 to promote his candidacy. This protest was denied, and, after exhausting his other union remedies, O'Connor filed a complaint with the Secretary of Labor, William E. Brock. On November 30, 1984, the Secretary commenced an action in the United States District Court for the Southern District of New York charging Region III with, *inter alia*, a violation of § 481(g).[1] On July 15, 1985, the Secretary filed an amended complaint adding CSEA as a defendant.[2]

The gravamen of the Secretary's complaint was that, in connection with the 1984 Region III election, Local 860's newspaper, *Union News*, had published two articles in May, 1984 promoting the candidacy of Pat Mascioli. One was a full page interview with the candidate. The second was a letter by Local 860 Vice-President Janice McGuiness explicitly endorsing Mascioli's candidacy for the regional presidency. The letter stated in part:

[t]his month you will again have an opportunity to exercise your right to vote. The Region elections will take place. The winner of this race, and his officers, will determine how our Region will be run. The President will also be a Statewide Vice President with input into the Statewide Union. The three candidates running for the office of President all work for the county of Westchester and are known to you. This time you will be able to weigh the kind of service each has provided you in the past and will be able to decide who will best meet your needs in the future. Who has been responsible when called and who has not been available, the person who has dedicated night and day for the membership and the one who has not.

To me the choice is clear—Pat Mascioli has and will continue to put the membership first.

The Secretary recognized that Local 860 consists entirely of public sector employees and thus is not a labor organization within the meaning of LMRDA.[3] The Secretary conceded, therefore, that in general funds

---

**1.** The Secretary's complaint also included challenges to the fairness of the election for Region III Treasurer. In that election the tabulation of votes was: Salvatore Greco, 1,353, Eleanor McDonald, 2,820, Doris Mikus, 559. In May, 1984, Mikus filed a protest with the CSEA Statewide Election Procedures Committee complaining that McDonald was ineligible to be a candidate for Region III office because her position as Acting Comptroller for the Town of Greenburgh was a managerial position. After this protest was denied, Mikus complained to the Secretary. Subsequently the Secretary charged that, by allowing a managerial employee to be a candidate for union office, Region III failed to ensure a fair election in violation of § 481(d), and denied members in good standing the right to vote for

or otherwise to support the candidates of their choice without fear of interference or reprisal in violation of § 481(e). The district court ruled against the Secretary on both of these charges, and they are not at issue on appeal.

**2.** Both O'Connor and Mikus were later granted permission to intervene.

**3.** "Labor Organization" is defined in §§ 402(i) and (j) of the LMRDA to exclude unions consisting entirely of public sector employees. *See New Jersey County and Municipal Council No. 61 v. American Federation of State, County and Municipal Employees,* 478 F.2d 1156, 1158 (3d Cir.), *cert. denied,* 414 U S. 975, 94 S.Ct. 290, 38 L.Ed.2d 218 (1973).

earned or collected by Local 860 could be expended to promote candidates in union elections without implicating § 481(g) and rendering those elections invalid. The Secretary contended, however, that in this case the cost of publishing and mailing the May, 1984 edition of *Union News* was paid with funds that had been received by CSEA as union dues and subsequently distributed to Local 860. Hence, because CSEA was a labor organization subject to the LMRDA, the Secretary insisted, the expenditure by Local 860 constituted a clear violation of § 481(g).

## C. The District Court's Decision

After a two-day bench trial, the district court handed down its decision and set forth its findings and conclusions. The court found that CSEA was a labor organization within the meaning of the LMRDA, and that the cost of publishing and mailing the May, 1984 issue of *Union News* was paid for for with union dues money received by CSEA and then distributed to Local 860. Judge Goettel further found that the two articles in the May issue promoted the candidacy of Pat Mascioli, that these articles could have affected the outcome of the Region III election, and that the Region III election was subject to the provisions of the LMRDA.

Despite these factual findings, the district court concluded that Local 860's actions in the Region III election did not constitute a violation of § 481(g). The district court held that the violation alleged by the Secretary required proof that the union dues improperly used to promote Mascioli's candidacy were, at the time of that use, owned by or under the control of a labor organization subject to the requirements of the LMRDA. Judge Goettel found, however, that once the union dues were distributed to Local 860, neither CSEA nor Region III owned the funds or exercised any control over the manner in which the monies were expended, and that neither CSEA nor Region III exercised any pre-publication control over the *Union News*, or had any pre-publication knowledge of its con-

tents. Construing the Secretary's action as an attempt to impose the LMRDA's standards upon a public sector local otherwise beyond the reach of the LMRDA, the district court dismissed the Secretary's complaint.

## 2. DISCUSSION

### A. § 481(g)

Accepting all of the district court's factual findings, the Secretary now challenges that court's refusal to recognize a violation of § 481(g) absent a showing that a union subject to the LMRDA owned or controlled the funds improperly expended. Specifically, the Secretary contends that § 481(g) protects against the improper use of labor organization dues in LMRDA elections without regard to what entity actually owns or controls those funds. In protecting the union election process, the Secretary maintains, § 481(g) simply bans the use of a particular form of property—union dues received by a labor organization—to promote candidates in LMRDA elections. According to the Secretary, nothing in the statute indicates that membership dues received by an LMRDA union are transformed into some other kind of money as the funds are distributed to locals for their use.

We cannot agree with the Secretary's interpretation of the LMRDA. § 481(g) provides that

> [n]o moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.

If the first sentence of this provision does not plainly reveal that Congress did not intend to bar the use of funds for union elections simply because those funds once in the past had been received by an

LMRDA union, then the second sentence removes the ambiguity. By using the words "[s]uch moneys of a labor organization" in the second sentence, Congress indicated that it was referring only to expenditures of property owned or controlled by an LMRDA organization or an employer.

■ In adopting subchapter five of the LMRDA, Congress aimed to insure free and democratic union elections. *See Wirtz v. Local 153, Glass Bottle Blowers Ass'n,* 389 U.S. 463, 470, 88 S.Ct. 643, 647–48, 19 L.Ed.2d 705 (1968); *Donovan v. Local Union 70, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America,* 661 F.2d 1199, 1201 (9th Cir. 1981). We express no view as to whether this objective would be advanced by empowering the Secretary of Labor to invalidate an LMRDA election on the basis of expenditures by a non-LMRDA local where no LMRDA union had any control over those expenditures. We conclude, however, that the statute as drafted does not purport to do that. We hold, therefore, that a violation of § 481(g) requires proof that it is an LMRDA labor organization which owns or controls the funds spent to promote the candidacy.

*Donovan v. Local Union 70, Id.,* accords with this standard. In that case, the Secretary charged a LMRDA union with a violation of that part of § 481(g) that provides that "no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the [LMRDA]." The Ninth Circuit affirmed a finding that the LMRDA had been violated where members of a defendant union took two trailers belonging to their employer and used them as billboards to promote the candidacy of incumbent candidates in an election. The court held that the ban on contributions of employer monies had been violated although the employer had no knowledge that its property was being used in the election and no intent to contribute the use of the property. The violation had occurred, in short, because the property used to promote the candidates was owned by the employer.

B.   The Question of Control

■ Whether an LMRDA union is in fact the entity contributing, applying or spending union funds received as membership dues to promote a candidacy depends, of course, on the circumstances of a specific case, and we express only the views necessary to decide this litigation. We note, however, that the inquiry is not simply the formal one whether an LMRDA organization is the record owner legally entitled to dispose of the funds. Rather, the appropriate question is whether the accused union has intentionally channeled funds through an entity beyond the reach of the statute for uses that directly influence an LMRDA election. If the accused union has either explicitly or implicitly attached to a distribution of funds received as membership dues conditions which require, direct, or encourage that those funds be used to influence an LMRDA election, then a violation of § 481(g) has occurred. In a case such as that, the LMRDA union has retained sufficient control over the funds to support the finding that the funds remain its property.

■ In the present case, we are convinced that the funds expended by Local 860 to promote the candidacy of Pat Mascioli were its own and not the property of CSEA. Although, pursuant to its constitution, CSEA possessed the authority to regulate the ways in which its subdivisions expended their resources, here there is no evidence that CSEA in fact exercised that power, formally or informally.[4]

---

4.  By amending its by-laws, CSEA could restrict the purposes for which local unions spend union dues. *See* CSEA Constitution, Article IX; CSEA By-Laws, Article VII. In fact, the only restriction imposed by CSEA on its locals is contained in Article IX, § 2 of the by-laws, which provides that the CSEA Board of Directors must approve local expenditures of funds appropriated jointly to any cause with any other labor organization.

Once Local 860 received membership dues from CSEA, the local was free to use those funds as it deemed appropriate. Local 860 did not have to seek approval of CSEA on expenditures, and, although CSEA encouraged Local 860 to do so, the local was not required to submit its budget to CSEA headquarters in Albany.

There is no evidence in the record that Local 860 acted as an agent of CSEA or pursuant to its direction when it spent its own money to promote the election of Pat Mascioli. Moreover, there is no basis for the inference that CSEA distributed the membership dues to Local 860 with restrictions attached, on the implicit assumption that Local 860 would apply the funds to promote Mascioli's candidacy. On the contrary, as the parties stipulated and the district court found, CSEA had no knowledge and no expectation that Local 860 intended or planned to use resources to promote the candidacy. Furthermore, the funds at issue in this case came to Local 860 by way of an established procedure by which CSEA collected dues from its members and then distributed them among the local, regional and statewide organizations. CSEA's by-laws set the amount of membership dues and decreed the formula for their distribution. These calculations were based upon per capita determinations and in no way reflected considerations of the purposes to which the dues would be contributed. There is no evidence that CSEA deviated from the appropriate formulas in making its distributions to Local 860. Rather, Local 860 received only those funds to which it was entitled pursuant to CSEA's constitution and by-laws.

In light of these facts, we find that the monies expended on the Region III election by Local 860 were not "moneys received by any labor organization" within the meaning of § 481(g). We conclude therefore that the expenditure by Local 860 did not constitute a violation of the LMRDA and accordingly that the district court correctly dismissed the Secretary's complaint.

Affirmed.